IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

| | | |
|---|---|---|
| PHILIP LUCK, | : | |
| | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION |
| v. | : | NO. 2:05-CV-37-WCO |
| | : | |
| J. MARVIN PIPPERT, in both his | : | |
| official and individual capacities; | : | |
| DAVID POTTER, in both his official | : | |
| and individual capacities; | : | |
| THOMAS C. MEREDITH, | : | |
| Chancellor of Board of Regents; and | : | |
| BOARD OF REGENTS OF THE | : | |
| UNIVERSITY SYSTEM OF GEORGIA | : | |
| d/b/a NORTH GEORGIA COLLEGE | : | |
| & STATE UNIVERSITY, | : | |
| | : | |
| Defendants. | : | |

## ORDER

The captioned case is before the court for consideration of plaintiff's motion for partial summary judgment [54-1] and defendants' motion for summary judgment [56-1].

### I.     Factual Background and Procedural History

Plaintiff was employed by North Georgia College and State University ("NGCSU") to teach in the Department of Psychology/Sociology

("Department").  (Compl. ¶ 13.)  Plaintiff was hired for the 2003-2004 school year under a one-year renewable contract as a non-tenure track professor.  (Defs.' Statement of Material Facts ¶ 16.)  In January 2004, Pippert conducted an evaluation of plaintiff's performance during his first semester and concluded that his ratings "were in the highest quartile for the department for the fall semester."[1]  (Compl. ¶ 14.)  Plaintiff was subsequently hired for the 2004-2005 school year as a tenure track professor in the Department under a one-year renewable contract.  (Defs.' Statement of Material Facts ¶ 22.)  During the relevant period, defendant J. Marvin Pippert was Chair of the Department.  (Id. ¶ 17.)

In August 2004, Ronald Barker began teaching in the Department as a non-tenure track temporary instructor.  (Compl. ¶ 17.)  In October 2004, Sally Nelson Wiedmann, an associate professor in the Department, spoke with Pippert concerning the content of Barker's course and showed Pippert a copy of Barker's reading list and an exam.  (Id. ¶ 20; Pl.'s Statement of Material Facts ¶ 10.)  Plaintiff alleges that Wiedmann informed Pippert that she received the documents from plaintiff.  (Pl.'s Statement of Material Facts ¶ 11.)  Plaintiff

_____

[1] Luck's score of 5.6 is characterized by defendants as "average" in that some professors had higher scores, some had lower scores.  (Defs.' Statement of Material Facts, ¶ 21.)

further alleges that Pippert publicly accused him of breaking into Barker's office to steal his reading list and taking a copy of Barker's exam from the photocopy machine.  (Compl. ¶¶ 22, 27.)

Pippert recommended to Robert Lyman, the Dean of the NGCSU School of Arts and Letters, that plaintiff's contract not be renewed for the next academic year.  (Defs.' Statement of Material Facts ¶ 17, 28.)  Lyman and Linda Roberts-Betsch, the Vice President of Academic Affairs, and David Potter, the newly-appointed President of NGCSU[2], all agreed with the recommendation.  (Id. ¶ 30.) Potter made the ultimate decision not to renew plaintiff's contract.  (Id. ¶ 27; Potter Aff. ¶ 10.)

In January 2005, plaintiff was notified by Potter that his contract would not be renewed for the 2005-2006 school year.  (Compl. ¶ 21.)  Defendants maintain that the reasons for the non-renewal of plaintiff's contract were plaintiff's relationships with female students and his use of the NGCSU telephone to make long distance phone calls to one of these students.  (Defs.' Statement of Material Facts ¶¶ 24-26, 29.)  Both Roberts-Betsch and Potter claim to have been unaware of the internal departmental dispute involving Barker's documents when they

_____

[2] David Potter was appointed President of NGCSU in January 2005.  (Potter Aff. ¶ 3.)

made their decisions regarding non-renewal.  (Roberts-Betsch Aff. ¶ 23; Potter Aff. ¶ 10.)  Plaintiff, however, alleges that the reason for his "termination"[3] was Pippert's public accusation that plaintiff broke into Barker's office and stole his documents.  (Compl. ¶ 27.)

Plaintiff completed the term of his employment with NGCSU for the 2004-2005 school year.   (Defs.' Statement of Material Facts ¶ 33.)   Plaintiff did not apply to the Board of Regents for a review of Potter's decision regarding the non-renewal of plaintiff's contract; rather, his attorney wrote a letter to Potter requesting a "name-clearing hearing."  (Id. ¶ 34.)

Plaintiff filed suit on March 11, 2005 against Pippert[4], Potter, Thomas C. Meredith, the Chancellor of the Board of Regents, and the Board of Regents for a violation of his due process rights under the Fourteenth Amendment ("Count I") and for slander under O.C.G.A. § 51-5-4 ("Count II").  Plaintiff claims that his liberty interest was violated when he was terminated under circumstances in which he was accused of wrongdoing and not provided a due process hearing to allow him to rebut these charges.  Plaintiff asserts that he is entitled to damages

---

[3] Defendants maintain that plaintiff was not "terminated" but, rather, that his contract was not renewed.  (Defs.' Statement of Material Facts ¶ 33.)

[4] In February 2005, Pippert resigned from NGCSU for reasons unrelated to this lawsuit.  (Defs.' Statement of Material Facts. ¶ 36.)

pursuant to 42 U.S.C. § 1983 for denial of his protected liberty interest.  Plaintiff also asserts that he is entitled to a name-clearing hearing.

On May 6, 2005, plaintiff filed a motion for a name clearing hearing [11-1] to allow him to respond to the allegations made against him.  By order dated June 15, 2005 [22-1], the court denied plaintiff's motion as premature.  Plaintiff now moves for summary judgment on his claims for violation of his right to procedural due process and for slander.  Defendants also move for summary judgment on all counts.

## II.      Summary Judgment Standard

Summary judgment shall be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).  Only those claims for which there is no need for a factual determination and for which there is a clear legal basis are properly disposed of through summary judgment.  See Celotex Corp. v. Catrett, 477 U.S. 317 (1986).

It is well-settled that a court evaluating a summary judgment motion must view the evidence in the light most favorable to the non-movant.  See, e.g., Samples v. City of Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988).  It is important

to recognize, however, that this principle does not require the parties to concur on every factual point.  Rule 56 "[b]y its very terms . . . provides that the mere existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact."  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986).

Consideration of a summary judgment motion does not lessen the burden on the nonmoving party.  The nonmoving party still bears the burden of coming forth with sufficient evidence.  <u>See</u> <u>Earley v. Champion Int'l Corp.</u>, 907 F.2d 1077, 1080 (11th Cir. 1990).  However, it is important to note the difference "between direct evidence and inferences that may permissibly be drawn from that evidence.  Where a nonmovant presents direct evidence that creates a genuine issue of material fact, the only issue is one of credibility; thus, there is no legal issue for the court to decide."  <u>Mize v. Jefferson City Bd. of Educ.</u>, 93 F.3d 739, 742 (11th Cir. 1996).  On the other hand, "[a] court need not permit a case to go to a jury . . . when the inferences that are drawn from the evidence, and upon which the nonmovant relies, are 'implausible.'"  <u>Id.</u> at 743.  Adopting language from one of its sister circuits, the Eleventh Circuit stated:

> If the nonmoving party produces direct evidence of a material fact, the court may not assess the credibility of this evidence nor weigh against it any conflicting evidence presented by the moving party. The nonmoving party's evidence must be taken as true. Inferences from the nonmoving party's "specific facts" as to other material facts, however, may be drawn only if they are reasonable in view of other undisputed background or contextual facts and only if such inferences are otherwise permissible under the governing substantive law. This inquiry ensures that a "genuine" issue of material fact exists for the factfinder to resolve at trial.

Id. (citation omitted). "Where the evidence is circumstantial, a court may grant summary judgment when it concludes that no reasonable jury may infer from the assumed facts the conclusion upon which the nonmovant's claim rests." Id.

### III.   Section 1983 Claim

To establish a claim under 42 U.S.C. § 1983, plaintiff must show that a person acting under color of state law deprived him of a constitutional or statutory right. See Edwards v. Wallace Cmty. College, 49 F.3d 1517, 1522 (11th Cir. 1995). Plaintiff has alleged a violation of his liberty interests under the Due Process Clause based on alleged statements by defendant Pippert that plaintiff was terminated for breaking and entering and theft. The Supreme Court has held that injury to reputation, by itself, does not constitute a deprivation of a liberty or property interest protected under the Fourteenth Amendment. Paul v. Davis, 424 U.S. 693, 701-02 (1976). To invoke the procedural protections of the Due

Process Clause, a plaintiff must establish "the fact of the defamation 'plus' the violation of some more tangible interest."  Cannon v. City of W. Palm Beach, 250 F.3d 1299, 1302 (11th Cir. 2001) (citing Paul, 424 U.S. at 701-02).   A plaintiff, however, may meet this so-called stigma-plus test when he can establish that the "reputational damage [was] sustained in connection with a termination of [government] employment."   Cotton v. Jackson, 216 F.3d 1328, 1330 (11th Cir. 2000).

To state a claim for deprivation of a liberty interest under the Due Process Clause, a plaintiff must show: (1) a false statement; (2) of a stigmatizing nature; (3) attending a governmental employee's discharge; (4) made public; (5) by the governmental employer; (6) without meaningful opportunity for a name-clearing hearing.  Warren v. Crawford, 927 F.2d 559, 565 (11th Cir. 1995).   A plaintiff, however, cannot state a procedural due process claim under § 1983 unless he can show that there is no adequate state procedure that would remedy the alleged procedural deprivation.  McKinney v. Pate, 20 F.3d 1550, 1557 (11th Cir. 1994) (en banc).  According to the Eleventh Circuit, "[i]t is the state's failure to provide adequate procedures to remedy the otherwise procedurally flawed deprivation of a protected interest that gives rise to a federal procedural due process claim."  Cotton, 216 F.3d at 1331.  This rule affords the state an opportunity to "remedy

the procedural failings of its subdivisions and agencies in the appropriate fora –
agencies, review boards, and state courts" before being subjected to claim for
violation of due process.   McKinney, 20 F.3d at 1560.   Therefore, if state law
provides a remedy, regardless of whether plaintiff has taken advantage of the
remedy, no federal due process violation exists.   Id.; see also, Cotton, 216 F.3d at
1331 n. 2;  Horton v. Bd. of County Comm'rs of Flagler County, 202 F.3d 1297,
1300-1301 (11 Cir. 2000).

Plaintiff claims that no adequate remedy exists under state law.  Assuming
that plaintiff is correct in his assertion that no specific state law remedies were
available to him[5], the court still believes that plaintiff would be entitled to seek
a writ of mandamus.  See Cotton, 216 F.3d at 1332.  Georgia law provides that a
party may seek a writ of mandamus where there is no other specific legal remedy
available and a party has a clear legal right to have a certain act performed.
O.C.G.A. § 9-6-20.   In Cotton, the Eleventh Circuit determined that a state

---

[5] Defendant asserts that another remedy was available to plaintiff as he
could have petitioned the Board of Regents for a review of the non-renewal
decision pursuant to the Board of Regents bylaws.  Plaintiff, however, argues that
he did not know the proper procedure for appealing his non-renewal.  The court
does not need to address the availability of this remedy as it does not affect the
court's decision here.   See Cotton, 216 F.3d at 1332 n. 3. (plaintiff's procedural
due process claim would be precluded either by other available state remedies or,
if such remedies are unavailable, by a mandamus action).

mandamus proceeding was an adequate remedy at state law to protect the due process rights of a plaintiff who had asserted a claim for deprivation of his liberty interest in his reputation after being terminated from government employment due to accusations that he sexually harassed subordinates.   216 F.3d at 1333. Plaintiff seeks to distinguish <u>Cotton</u> from his case by arguing that he is unable to identify which "official" to name in the mandamus action.  The court finds this argument meritless as plaintiff has managed to identify Pippert, Potter, Meredith, and the Board of Regents as defendants in this action.

Plaintiff would be entitled under Georgia law to an order of mandamus directing defendants to hold a name-clearing hearing if he can prove both that he is without other legal remedy and that defendants deprived him of his federal liberty interest in his reputation.  <u>Id.</u>  As mandamus would be an adequate remedy under state law to ensure that plaintiff is not deprived of his due process rights, plaintiff has failed to state a claim for a violation of his procedural due process rights.  <u>Id.</u>  Accordingly, defendants are entitled to summary judgment on plaintiff's § 1983 claim.

### IV.    State Law Slander Claim

As the court's ruling disposes of plaintiff's claim under federal law, the only remaining claim is that for slander under state law.  The court declines to

accept supplemental jurisdiction over this claim.  See 28 U.S.C. § 1367(c)(3) (court may decline to exercise supplemental jurisdiction when it has dismissed all claims over which it had original jurisdiction).  Accordingly, plaintiff's claim for slander is **DISMISSED**.

### V.    Conclusion

Based on the foregoing, plaintiff's motion for partial summary judgment is hereby **DENIED** [54-1].  Defendants' motion for summary judgment is hereby **GRANTED** [56-1] as to Count I.  Count II is hereby **DISMISSED**.

IT IS SO ORDERED, this 21st day of February, 2006.

s/William C. O'Kelley
WILLIAM C. O'KELLEY
Senior United States District Judge

11